**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **JAMES MICHAEL COOK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:20-cv-790-CWB** |
| ) | |
| **KILOLO KIJAKAZI,[1]** ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

## I.    Introduction and Administrative Proceedings

James Michael Cook ("Plaintiff") filed an application for Disability Insurance Benefits

under Title II of the Social Security Act and an application for Supplemental Security Income

under Title XVI of the Social Security Act on November 20, 2018, initially alleging disability

onset as of October 11, 2018, which was later amended to April 30, 2019, due to osteonecrosis hip

(degenerative hip), back and wrist pain, left knee anterior cruciate ligament ("ACL") replaced in

2001, heart murmur, mitro valve prolapse, and acid reflux.  (Tr. 15, 33-34, 63-66, 77-78, 146, 153,

186, 197).[2]  Plaintiff's claims were denied at the initial level on January 2, 2019 (Tr. 15, 63-89),

and Plaintiff requested *de novo* review by an administrative law judge ("ALJ") (Tr. 15, 98-103).

The ALJ subsequently heard the case on January 27, 2020, at which time live testimony was given

by Plaintiff (Tr. 15, 28, 35-54) and by a vocational expert (Tr. 51, 58).  The ALJ took the matter

under advisement and issued a written decision on March 4, 2020, that found Plaintiff not disabled.

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on
July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

(Tr. 15-23).

The ALJ's written decision contained the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.  The claimant has not engaged in substantial gainful activity since April 30, 2019, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairment: avascular necrosis of the right hip (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations. The claimant must be given the opportunity to alternate between sitting and standing at least every 30 minutes. The claimant must be allowed to use a cane for ambulation. The claimant is limited to occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs, but never crawling and never climbing on ladders, ropes, or scaffolds. The claimant must avoid unprotected heights and dangerous moving machinery. The claimant must avoid concentrated exposure to dusts, fumes, gases, and other pulmonary irritants. The claimant must avoid exposure to extreme temperatures, extreme humidity, wetness, or vibration.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on November 24, 1980 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 11, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17, 18, 20, 21, 22).

On August 10, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at p. 2; Doc. 14 at p. 12). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 9, 10), and the undersigned finds that the case is now ripe for review pursuant to 42 U.S.C. § 405(g). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a

reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  However, reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180      (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to

---

[4] *McDaniel* is an SSI case.  Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II.  SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.* at 1240.

## III.    Issues on Appeal

Plaintiff raises two issues on appeal: (1) that the ALJ did not properly evaluate Listing 1.02; and (2) that the ALJ did not properly evaluate Plaintiff's pain.  (Doc. 14 at p. 1).

## IV.    Discussion

### A.    The ALJ's Evaluation of Listing 1.02

Plaintiff contends that he presented the ALJ with evidence that his avascular necrosis[5] of the right hip meets or equals Listing 1.02.  (Doc. 14 p. at 6).  Plaintiff argues that the ALJ failed to articulate the reasons for finding that Plaintiff did not meet Listing 1.02, as the ALJ did not identify any specific findings or provide record cites in reaching such a conclusion.  (*Id.* at p. 9). The Commissioner contends that Plaintiff failed to provide objective medical evidence that his impairment met or equaled all of the criteria in the introductory paragraph of Listing 1.02 and subsection A of Listing 1.02.  (Doc. 15 at p. 5).  Specifically, the Commissioner argues that Plaintiff failed to satisfy the gross anatomical deformity criteria of the Listing and also that Plaintiff failed to provide medical evidence that his condition resulted in the inability to ambulate effectively as required by subsection A of Listing 1.02.  (*Id.* at pp. 5-6).  The Commissioner further argues that the ALJ's evaluation of Listing 1.02 was sufficient as the ALJ clearly referred to

---

[5] Avascular necrosis "is the death of bone tissue due to a lack of blood supply.  Also called osteonecrosis, it can lead to tiny breaks in the bone and cause the bone to collapse.  The process usually takes months to years."
https://www.mayoclinic.org/diseases-conditions/avascular-necrosis/symptoms-causes/syc-20369859#:~:text=Avascular%20necrosis%20is%20the%20death,to%20a%20section%20of%20the
bone.  (last viewed March 30, 2023).

findings found later in the decision in explaining why Plaintiff's impairment did not meet a listing. (*Id*. at p. 10).

A claimant bears the burden of proving that his or her impairments meet or equal a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (internal citation omitted); *see* 20 C.F.R. § 404.1525(a)-(d); 20 C.F.R. § 404.1526(a). The duration requirement means that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. at 531 (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*. A claimant who is not currently engaging in substantial gainful activity and who has a severe impairment which meets or equals a listing is entitled to disability benefits, and the sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

"The ALJ's finding as to whether a claimant meets a listed impairment may be implied from the record.  Furthermore, while the ALJ must consider the Listings in making its disability determination, 'it is not required that the [ALJ] mechanically recite the evidence leading to [its] determination.'" *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012) (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir.1986)).

In finding that Plaintiff did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," the ALJ stated in full:

> The claimant's avascular necrosis of the right hip fails to meet the listing for 1.02 (Major dysfunction of a joint), because the record, consistent with the findings below, does not demonstrate gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on imaging studies of joint narrowing, bony destruction, or ankylosis of the affected joint(s). With: involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively.

(Tr. 18).

> Listing 1.02A (which incorporates the requirements of Section 1.02) states:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A.  Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b. ...

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02A.  An "inability to ambulate effectively" is described as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.

Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b.

Plaintiff argues that he has presented evidence establishing the elements under Listing 1.02A, which show that his avascular necrosis of the right hip qualifies as an impairment that meets or equals such listing. The Commissioner contends that Plaintiff failed to show that his impairment qualified as a "gross anatomical deformity" and that he failed to provide medical evidence to show that his impairment resulted in the "inability to ambulate effectively." (Doc. 15 at pp. 5-6). Because the Commissioner does not dispute that Plaintiff has presented evidence of "chronic joint pain and stiffness with signs of limitation of motion" or "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)," the court will focus on the contentions raised by the Commissioner involving "gross anatomical deformity" and the "inability to ambulate effectively."

Plaintiff argues that he presented evidence of "gross anatomical deformity," citing November 9, 2018 medical records that show that Plaintiff underwent x-rays that confirmed "advanced right hip AVN with slight superior femoral head fragmentation and sclerosis."

(Doc. 14 at p. 7, citing Tr. 366).[6]  Plaintiff further cites medical records from August 30, 2019, in which Plaintiff's follow-up x-rays showed advancing right hip AVN with early fragmentation and where Dr. Patrick Martin opined that Plaintiff had "an eminent condition at which he [would] need a right hip replacement in the near future," as evidence of "gross anatomical deformity."  (*Id.*, citing Tr. 432).

As an initial matter, the regulations do not define "gross anatomical deformity" but instead give examples of what constitutes a "gross anatomical deformity," such as "subluxation, contracture, bony or fibrous ankylosis, instability."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02.  However, the Commissioner cites to *Igo v. Colvin*, 839 F.3d 724 (8th Cir. 2016), in which the Eighth Circuit relied on the common medical definition of "gross," referring to "coarse or large" and "visible to the naked eye without the use of magnification."  *Id*. at 729 (citing *Dorland's Illustrated Medical Dictionary* 819 (31st ed. 2007)).  In *Igo*, the plaintiff asserted that he satisfied Listing 1.02A because he had instability.  *Id*.  Noting that the ALJ considered evidence regarding the nature of the deformity and noted that x-rays revealed severe bilateral hip degenerative changes and joint space narrowing, the court found that because the plaintiff's "impairments were discovered through radiographic studies and were not obvious to the naked eye, there [wa]s at least substantial evidence supporting the conclusion that [the plaintiff] did not suffer from a gross anatomical deformity."  *Id*.

Relying on the reasoning in *Igo* where the court found that the impairments were not evidence of a gross anatomical deformity as they were discovered through radiographic studies,

---

[6] "Fragmentation" is a division into fragments—a "fragment" being "one of the small pieces into which a larger entity has been broken."  "Sclerosis" is "an induration or hardening, such as hardening of a part from inflammation, increased formation of connective tissue, or disease of the interstitial substance."  Dorland's Illustrated Medical Dictionary 743-44, 1680 (32nd ed. 2012).

the Commissioner argues that "while the November 2018 x-rays showed 'advanced right hip AVN with slight superior femoral head fragmentation and sclerosis' (Tr. 366) and the August 2019 x-rays showed 'advancing right hip AVN' with 'no subchondral collapse, but there is early fragmentation' (Tr. 432), these findings did not demonstrate subluxation, contracture, bony or fibrous ankylosis, or instability."  (Doc. 15 at pp. 5-6).[7]  The Commissioner also asserts that no records describing a physical examination reflect a finding of a gross anatomical deformity.  (*Id*. at p. 6).

In reply, Plaintiff contends that Listing 1.02 provides examples of a gross anatomical deformity and that *Igo* is not binding in this Circuit and fails to address deformities that are only discoverable via medical imaging.  (Doc. 19 at p. 1).  Plaintiff asserts that he presented evidence confirming "advanced right hip AVN with slight superior femoral head fragmentation and sclerosis," which establishes gross anatomical deformity.  (*Id*. at p. 2).  Plaintiff also argues that *Igo* is distinguishable from the facts here, as the plaintiff in *Igo* was diagnosed with osteoarthritis and degenerative joint disease, not avascular necrosis, the plaintiff conceded that he did not have subluxation, contracture, or bony or fibrous ankyloses, and the plaintiff's impairments were discovered through radiographic studies while Plaintiff's avascular necrosis was previously diagnosed and then confirmed via x-ray.  (*Id*. at pp. 2-3).

At step three of the decision, the ALJ expressly found that Plaintiff did not meet Listing 1.02.  (Tr. 18).  Although the Commissioner asserts that the "ALJ properly found Plaintiff

---

[7] Subluxation is "an incomplete or partial dislocation;" contracture is "a condition of fixed high resistance to passive stretch of a muscle, resulting from fibrosis of the tissues supporting the muscles or the joints, or from disorders of the muscle fibers;" fibrous ankylosis is "reduced mobility of a joint due to proliferation of fibrous tissue;" and instability is the "lack of steadiness or stability; inability of a joint to maintain support during use."  *Dorland's Illustrated Medical Dictionary* 1791, 410, 94, 944 (32nd ed. 2012).

did not demonstrate that his avascular necrosis of the right hip was a gross anatomical deformity," (Doc. 15 at p. 6), the ALJ did not explain the specific reasoning underlying the determination, only stating that evidence in the record located elsewhere in the decision supported the conclusion that Plaintiff did not meet or equal Listing 1.02. (Tr.18). An ALJ is not required to make detailed findings or explicitly discuss why a plaintiff did not actually meet a listing as long as substantial evidence supports the ALJ's conclusion that the plaintiff's impairment did not meet a listing. *See Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 841-42 (11th Cir. 2019) ("While the Listings in 'Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination.'") (quoting *Hutchison*, 787 F.2d at 1463); *Turberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009) ("We conclude that—though the ALJ did not explicitly discuss why Rowell did not actually meet Listing 112.05—substantial record evidence supports that Rowell's condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that Rowell was not disabled."); *Prince v. Comm'r of Soc. Sec.*, 551 F. App'x 967, 971 (11th Cir. 2014) ("To the extent Prince argues that the ALJ failed to make detailed findings or explicitly discuss whether her impairments met or equaled Listing 4.04C, this argument is meritless. The ALJ's conclusion that Prince did not meet that specific listing can be implied from the ALJ's discussion of Prince's medical evidence relating to her coronary artery disease and his general conclusion that Prince did not meet any medical listing."); *Robinson v. Kijakazi*, No. CV 20-00424, 2022 WL 944628, at *8 (S.D. Ala. Mar. 29, 2022) ("To the extent Plaintiff argues that the ALJ was required to provide a more fulsome analysis as to whether she meets or equals Listing 1.02, her claim is without merit. An ALJ is not required to 'mechanically recite the evidence leading to' his step three determination, and an ALJ's determination that a claimant's

impairments do not meet listing criteria may be implied from the ALJ's decision. ...  Although the ALJ did not explain the specific reasoning underlying this determination, he cited evidence elsewhere in his decision to support his conclusion that Plaintiff does not meet or equal Listing 1.02.") (citations and footnote omitted).

The ALJ generally stated that Plaintiff did not meet Listing 1.02 without providing any analysis as to what constitutes a "gross anatomical deformity."  No court in the Eleventh Circuit has adopted the *Igo* court's definition of "gross anatomical deformity."  Plaintiff argues that he presented medical evidence confirming "advanced right hip AVN with slight superior femoral head fragmentation and sclerosis" (Tr. 366, 432), which supports a finding of a "gross anatomical deformity" as a fragmentation of the bone prevents the bone from being able to "function normally" and a "hardening of tissue" stiffens the joint.  (Doc. 19 at p. 2).  The Commissioner cites to physical examination records, some of which the ALJ did not cite, that purportedly do not reflect any findings of a gross anatomical deformity.  (Doc. 15 at p. 6, citing Tr. 295, 333, 356-57, 366, 367, 368, 369, 377, 385, 387, 390, 410, 412, 415, 432).[8]  The ALJ cited to records that reflect that when presenting to the emergency department following his accident, Plaintiff "still had 5+ strength in all extremities with preserved range of motion," that November 2018 x-rays revealed "advanced right hip AVN with slight superior femoral head fragmentation and sclerosis," and that

---

[8] Where an ALJ does not cite evidence to support his finding, "it is inappropriate for the Court to supply this uncited evidence as substantial evidence in support of the ALJ's decision, especially where there is no indication that the ALJ relied on such evidence."  *Jackson ex rel. K.J. v. Astrue*, 734 F. Supp. 2d 1343, 1373 (N.D. Ga. 2010); *see* Dixon v. Astrue, 312 F. App'x 226, 229 (11th Cir.2009) (noting that a court "may not supply a reasoned basis for [an] agency's action that the agency itself has not given," but that the court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned") (quoting *Zahnd v. Sec'y Dep't of Agric.*, 479 F.3d 767, 773 (11th Cir.2007)).

November 2018 treatment records showed "5 out of 5 motor strength in all major muscle groups bilaterally." (Tr. 18, 19, 20, 333, 366, 377).

Courts in other circuits have found that evidence of avascular necrosis, including x-rays and MRI, satisfied the first requirements of Listing 1.02. *See Flores v. Colvin*, No. EDCV 14-00742, 2015 WL 4945725, at *2 (C.D. Cal. Aug. 20, 2015) (finding that plaintiff satisfied the first three requirements under Listing 1.02A, the court cited, along with other evidence, an x-ray of plaintiff's right hip that confirmed severe degenerative changes of the right hip, with loss of bone due to avascular necrosis and significant narrowing of the right hip joint compartment); *Lyle v. Astrue*, No. C10-1882, 2011 WL 3924799, at *6 (W.D. Wash. Aug. 8, 2011) (holding that medical reports, including imaging, documented right hip osteoarthritis due to avascular necrosis satisfied the first three requirements of Listing 1.02A), *report and recommendation adopted by* 2011 WL 3953780 (W.D. Wash. Sept. 6, 2011); *Pickett v. Astrue*, No. 1:11-CV-0160, 2012 WL 4470242, at *3 (S.D. Ind. Sept. 27, 2012) (noting that an imaging report of plaintiff's right hip revealed deformity of the right femoral head, suggesting gross anatomical deformity, the court found that the ALJ erred in finding that there was no gross anatomical deformity in plaintiff's lower extremities); *Sessoms v. Colvin*, No. 2:12-CV-62, 2013 WL 6190967, at *7-8 (E.D.N.C. Nov. 26, 2013) (finding that the evidence, sch as an x-ray and MRI, may support a finding that plaintiff's AVN constituted a "gross anatomical deformity" within the meaning of Listing 1.02); *Robertson v. Colvin*, No. 14 C 319, 2015 WL 684532, at *6 (N.D. Ill. Feb. 12, 2015) (noting that although the ALJ determined that plaintiff suffered from severe avascular necrosis in both hips and provided extensive detail as to the evidence regarding that ailment, the ALJ did not explain why it failed to meet the Listing 1.02A requirements or more specifically, the ALJ did not explain

why avascular necrosis, which is defined as the death of bone cells, would not give rise to a gross anatomical deformity and bony destruction).

Here, whether Plaintiff presented evidence establishing the first requirement under Listing 1.02—that Plaintiff's avascular necrosis constituted a gross anatomical deformity—does not need to be determined as Plaintiff failed to show that he could not ambulate effectively. *Richardson v. Astrue*, No. 10 CIV. 9356, 2011 WL 2671557, at *9 (S.D.N.Y. July 8, 2011), *report and recommendation adopted*, No. 10 CIV. 9356, 2011 WL 3477523 (S.D.N.Y. Aug. 8, 2011) (citing x-ray findings, the court stated: "Although Richardson's avascular necrosis likely constitutes a 'gross anatomical deformity' within the meaning of 1.02, there is substantial evidence to support the ALJ's finding that Richardson could 'ambulate effectively.'") (footnote omitted).

The Commissioner contends that the evidence does not support Plaintiff's contention that he met the "inability to ambulate effectively" definition set forth in the regulations, for there is no evidence of Plaintiff being unable to independently ambulate without the use of a hand-held device that limited the functioning of <u>both</u> of Plaintiff's upper extremities.  (Doc. 15 at p. 7).  *See Markham v. Berryhill*, No. 6:17-CV-01136, 2018 WL 4409345, at *7 (N.D. Ala. Sept. 17, 2018) (finding that the use of a single cane to walk did not show that plaintiff had an "inability to ambulate effectively" as defined in 1.00B2b(1)); *Wilson v. Berryhill*, No. 5:17-CV-1096, 2018 WL 4494112, at *4 (N.D. Ala. Sept. 18, 2018) (finding Listing 1.02 did not apply since there was no evidence that plaintiff required an assistive device that limited the functioning of *both* arms in order to walk) (emphasis in original).  Plaintiff, however, argues that there is more than one way to show such an inability to ambulate, namely "the inability to walk a block at a reasonable pace on rough or uneven surface."  (Doc. 19 at p. 3) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b(2)).  *See Mares v. Saul*, No. 18-CV-1068, 2019 WL 5068667, at *4 (D.N.M. Oct. 9,

2019) ("The Court is not persuaded by Defendant's position that ... the lack of a 'hand-held assistive device(s) that limits the functioning of both upper extremities' is dispositive. The Listing provides examples of the inability to ambulate effectively that do not include a two-handed assistive device."); *Queen v. Colvin*, No. 1:13-CV-01717, 2015 WL 728229, at *6 (N.D. Ga. Feb. 18, 2015) ("While the ALJ found that Plaintiff could ambulate effectively because he could walk 'without the use of a hand-held assistive device,' there is no evidence that the ALJ evaluated Plaintiff's walking ability in light of the other examples of ineffective ambulation given in Listing 1.00B2b, such as 'the inability to walk a block at a reasonable pace on rough or uneven surfaces.' 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2).").

The ALJ found that November 2018 treatment records from Neurology–Spine showed "5 out of 5 motor strength in all major muscle groups bilaterally, normal coordination, normal sensation, and normal gait." (Tr. 20, 377). The ALJ also considered Plaintiff's activities of daily living, finding that in his Function Report Plaintiff "indicated that he remains able to perform some cleaning, drive a car, go outside daily, shop in stores, take care of his cats, and manage money" and that Plaintiff "worked a sedentary position for 13-week tax season immediately prior to his amended alleged onset date of disability." (Tr. 20, 236-41). The ALJ also considered the opinion of the State agency medical consultant, Dr. Thomas G. Amason, who indicated that Plaintiff could perform light duty work. (Tr. 20, 65-76). "State agency medical ... consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1); *accord Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185, at *6 (M.D. Ala. July 6, 2022); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that an ALJ should consider a claimant's daily activities in evaluating the limiting effects of his or her impairments). The ALJ found Dr. Amason's opinion "somewhat persuasive," as it was generally

supported by and consistent with the medical evidence of record and Plaintiff's activities of daily living.  (Tr. 20).

Plaintiff cites to his testimony where he stated that he could not walk a block without stopping.  (Doc. 14 at pp. 8-9, citing Tr. 49).  However, the ALJ was free to consider Plaintiff's testimony in light of the rest of the medical record.  *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (the ALJ properly considered plaintiff's daily living activities as one factor in assessing the plaintiff's subjective complaints of pain). A claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Wimberley v. Berryhill*, No. CV 17-00558, 2019 WL 1418056, at *13 (S.D. Ala. Mar. 29, 2019) ("The ALJ is not required to accept a claimant's allegations of pain or other symptoms.").  The ALJ stated that "in consideration of the claimant's testimony at the hearing, to the extent reasonably supported by the record, the undersigned accommodated greater physical functional limitations than determined by the State agency medical consultant."  (Tr. 20).  The ALJ also acknowledged that Plaintiff had some limitations performing certain daily activities but concluded that "while none of these activities is dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that the claimant can perform work within the above parameters on a sustained and continuous basis."  (Tr. 20).

Plaintiff further cites to an Avascular Necrosis Questionnaire completed by Dr. Patrick Martin on January 9, 2020, (Tr. 433-35), in which Dr. Martin checked "yes" to a question asking if Plaintiff had a "major dysfunction of a joint(s)" that "involve[s] one or more major peripheral

weightbearing joints resulting in the inability to ambulate effectively."  (Doc. 14 at p. 9).[9]  The

Commissioner contends that Dr. Martin's statement that Plaintiff's impairment met the criteria of

Listing 1.02A was a statement on an issue reserved to the Commissioner—not a medical opinion—

and that the ALJ therefore was not required to consider it.  (Doc. 15 at p. 9).  Because a decision

as to whether a plaintiff meets a listing is reserved to the Commissioner, an ALJ is not required to

consider such an opinion.  *Vachon v. Comm'r of Soc. Sec.*, No. 6:20-CV-1521, 2022 WL 458604,

at *11 (M.D. Fla. Feb. 15, 2022) ("Under the pertinent regulations, such an opinion [as to whether

Plaintiff met a listing] is 'inherently neither valuable nor persuasive to the issue' of whether a

claimant is disabled.  20 C.F.R. § 404.1520b(c).  The ALJ was, therefore, not required to consider

Dr. Hansen's opinion.") (citing *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 542

(11th Cir. 2014)); *Kalishek v. Astrue*, No. 8:10-CV-714, 2011 WL 4389643, at *12 (M.D. Fla.

Aug. 23, 2011*), report and recommendation adopted*, No. 8:10-CV-714, 2011 WL 4389717

(M.D. Fla. Sept. 21, 2011*), aff'd sub nom. Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868

(11th Cir. 2012) (finding that doctor's opinion that plaintiff met Listing 1.02 would in no way bind

the ALJ, the court stated: "[O]pinions on some issues, such as 'whether the claimant is disabled,

whether the claimant's impairments meet or equal a listed impairment, the claimant's RFC, and

the application of vocational factors, are not medical opinions, but are, instead, opinions on issues

reserved to the Commissioner because they are administrative findings that are dispositive of a

case.'") (citations and internal quotation marks omitted); 20 C.F.R. §§ 404.1520b(c)(3)(iv),

416.920b(c)(3)(iv).  Here, Dr. Martin's check-marked statement was "inherently neither valuable

---

[9] The Questionnaire did not include an explanation of the phrase "inability to ambulate effectively" as defined in the Commissioner's regulations.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b.

nor persuasive," and the ALJ was not required to provide any analysis about how such evidence

was considered.  20 C.F.R. §§ 404.1520b(c)(3)(iv), 416.920b(c)(3)(iv).[10]

Further, the ALJ addressed Dr. Martin's opinion, stating:

> The undersigned also considered the treating source statement of Dr. Patrick Martin, who indicated that the claimant's impairments occasionally interfere with his attention and concentration needed to perform even simple work tasks. In addition, Dr. Martin indicated that the claimant would be absent from work as a result of his impairments more than four days per month (Exhibit 9F). The undersigned does not find this opinion fully persuasive because the medical evidence of record does not support this degree of absence or off task and the claimant's own 2019 work history is inconsistent with this opinion. In fact, the claimant's most recent physical examination show 5 out of 5 motor strength in all major muscle groups bilaterally, normal coordination, normal sensation, and normal gait (Exhibit 5F/5).

(Tr. 20, 377, 435).

Plaintiff failed to provide objective medical evidence that his impairment resulted in an

inability to ambulate effectively.  It is Plaintiff's burden to show that his condition meets or equals

a listing.  *Barron*, 924 F.2d at 229.  Accordingly, based upon the ALJ's consideration of the record

as a whole, the court concludes that substantial evidence supports the ALJ's determination that

Plaintiff does not have an impairment or combination of impairments that meets or medically

equals a listed impairment, namely Listing 1.02.

**B.      The ALJ's Evaluation of Plaintiff's Pain**

In determining whether a claimant is disabled, the claimant's symptoms, including pain,

are considered to the extent that they are reasonably consistent with objective medical evidence

and other evidence.  20 C.F.R. §§ 404.1529(a), 416.929(a).  The Commissioner will consider a

claimant's statements about his or her symptoms, such as pain, and any description that the

---

[10] Plaintiff argues that Dr. Martin's opinion never expressly stated that Plaintiff "met the listing for 1.02," (Doc. 19 at p. 6), but the check mark questionnaire directly quotes 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02A.

claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work. *Id*. However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. *Id*.; SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596, at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms."). The regulations set out a two-step process for the evaluation of subjective complaints, such as pain. *Id*.; SSR 16-3p, 2017 WL 5180304, at *3. To establish a disability based on testimony of pain and other symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or pain, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms or pain. *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503, at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson*, 284 F.3d at 1225);   20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3. "Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964, at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *2-3.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, such as pain, is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work. SSR 16-3p, 2017 WL

5180304, at *3-4; 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347, at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).  In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  If the ALJ discredits Plaintiff's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so."  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058, at *3 (M.D. Fla. Aug. 1, 2022). "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).

Plaintiff argues that the ALJ failed to properly evaluate his pain.  (Doc. 14 at p. 9). Specifically, Plaintiff argues that the ALJ's finding of his avascular necrosis to be "severe" (Tr. 17) triggered a need to evaluate the impairment according to the pain standard, that the second prong of the pain standard was satisfied when Dr. Martin opined that Plaintiff was limited in his abilities to jump, stoop, crawl, climb ladders, and squat due to his avascular necrosis (Tr. 434), and that the third prong of the pain standard was satisfied through Dr. Martin's medical opinion that Plaintiff was in need of a hip replacement (Tr. 366).  (Doc. 19 at p. 7).

In evaluating Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence generally does not support the alleged loss of functioning for the reasons set forth below.
>
> In terms of the claimant's alleged physical limitations, the medical evidence of record certainly supports significant sitting, standing, and walking limitations due to avascular necrosis of the right hip, confirmed on x-ray (Exhibit 4F). However, the record contains limited treatment because the claimant does not have insurance. The updated records note an intent to follow through on total hip replacement as soon as possible (Exhibit 8F). In any event, the undersigned accommodated with a sedentary limitation, a sit/stand option, and use of a cane, but nothing in the medical evidence of record would suggest an inability to perform this limited range of sedentary work. In fact, November 2018 treatment records from Neurology – Spine, which contains the most recent physical examination findings of record, show 5 out of 5 motor strength in all major muscle groups bilaterally, normal coordination, normal sensation, and normal gait (Exhibit 5F/5).[11]

(Tr. 19-20).

The ALJ also found that Plaintiff's subjective complaints were inconsistent with his own reports of his activities of daily living.   (Tr. 20).   *See* 20 C.F.R. §§ 404.1529(c)(3)(i),

---

[11] The ALJ erroneously stated that the November 2018 physical examination was the "the most recent physical examination findings of record," as Plaintiff had a physical examination on August 30, 2019, in which the examination revealed that Plaintiff had pain with internal and external rotation and that x-rays showed advancing right hip AVN. (Tr. 432). This misstatement is harmless as the ALJ noted the August examination elsewhere in the decision, stating that "[t]he updated records note an intent to follow through on total hip replacement as soon as possible (Exhibit 8F)." (Tr. 19). The ALJ also included the use of a cane in determining Plaintiff's RFC. (Tr. 18, 20). *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 775-76 (11th Cir. 2016) (holding the ALJ's five factual errors made when evaluating the claimant's subjective complaints were harmless because substantial evidence still supported the finding about subjective complaints).

416.929(c)(3)(i) (stating that an ALJ should consider a claimant's daily activities in evaluating the limiting effects of the claimant's impairments and related symptoms).  Here, the ALJ considered that Plaintiff could "perform some cleaning, drive a car, go outside daily, shop in stores, take care of his cats, and manage money," and that Plaintiff "actually worked a sedentary position for 13-week tax season immediately prior to his amended alleged onset date of disability."  (Tr. 20). *See May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958 (11th Cir. 2007) (finding allegations of disabling pain inconsistent with ability to drive, dine out, and shop).  The ALJ also considered Plaintiff's testimony in evaluating Dr. Amason's opinion that Plaintiff could perform light work and "accommodated greater physical functional limitations than determined by the State agency medical consultant."  (Tr. 20).

The record reflects that the ALJ properly considered both objective and subjective evidence in evaluating Plaintiff's statements regarding the intensity, persistence, or limiting effects of his pain.  Accordingly, the court concludes that the ALJ's findings regarding Plaintiff's subjective complaints are supported by substantial evidence.[12]

## V.    Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**.  A separate judgment will issue.

---

[12] Plaintiff states that "[i]f the ALJ did not have adequate records to make an informed decision, he should have ordered a consultative examination."  (Doc. 14 at p. 12).  Plaintiff did not raise this as a separate issue and only perfunctorily mentions it.  In any event, given that the record was sufficient for the ALJ to determine whether Plaintiff's avascular necrosis "met" Listing 1.02, "the ALJ was under no obligation to order a consultative examination or obtain expert medical testimony."  *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 843 (11th Cir. 2019).

**DONE** this the 30th day of March 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**